***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Hall, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding, with some modification, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 13 June 2001 as:
 *********** STIPULATIONS
1. At all relevant times the parties have been subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 22 February 2000, Deputy Commissioner Lorrie L. Dollar of the North Carolina Industrial Commission filed an Opinion and Award in this case, finding and concluding that employee J. Carmen Fuentes suffered a compensable heatstroke on 10 July 1998, that employee is permanently and totally disabled, and that employee requires nursing care on a twenty-four hour basis for the remainder of his life. The defendants did not appeal these findings or conclusions made by Deputy Commissioner Dollar.
3. By Opinion and Award filed 29 November 2000, the Full Commission found and concluded that employee J. Carmen Fuentes suffered a compensable heatstroke on 10 July 1998, that employee is permanently and totally disabled, and that employee requires nursing care on a twenty-four hour basis for the remainder of his life.
4. From 10 July 1998 to 3 November 1998, employee was hospitalized at Sampson Regional Medical Center, UNC Hospitals, and Hospital Central in San Luis Potosi, Mexico.
5. From 16 June 1999 to 26 June 1999, employee was hospitalized at Sociedad de Beneficencia Espanola in San Luis, Mexico.
6. From 4 November 1998 to 15 June 1999, employee received twenty-four hour care from his father Porfirio Fuentes and sister Yolanda Fuentes. During this time, Porfirio Fuentes and Yolanda Fuentes each provided twelve hours of care per day.
7. From 27 June 1999 to 13 May 2001, employee received twenty-four hour care from Porfirio Fuentes and Yolanda Fuentes. During this time, Porfirio Fuentes and Yolanda Fuentes each provided twelve hours of care per day.
8. From 14 May 2001 to approximately 28 May 2001, employee received twelve hours of nursing care per day, six days per week, from two nurses (each nurse six hours per day) hired and compensated by Porfirio Fuentes at the rate of $7.00 (seven dollars) per hour.
9. From 14 May 2001 to approximately 28 May 2001, Porfirio Fuentes and Yolanda Fuentes provided twelve hours of care per day, six days per week (each person six hours per day), and provided a full twenty-four hour day of care on 20 May 2001 and 17 May 2001.
10. The defendants have paid Porfirio Fuentes $4,000 (four thousand dollars) for the nursing care he had provided to employee.
11. Aside from the payment identified in paragraph (10) above, from 4 November 1998 to the present, the defendants have not provided any nursing care to employee.
12. As reflected by the 4 June 2001 Pre-Trial Agreement filed with the Commission, the parties further agreed and stipulated to the admissibility of the following items without further authentication, subject to the right of either side to take deposition testimony from employee's treating physicians and medical care providers:
 (a) Copies of records kept by Porfirio Fuentes and Yolanda Fuentes of the care they have provided to employee, identified as The plaintiff's Exhibit 1 (449 pages).
 (b) Photographs taken by Bruce Holt in December 2000, identified as The plaintiff's Exhibit 2(wheelchair); Exhibit 3 (medical supplies); Exhibit 4 (fruits, vegetables cooking materials); Exhibit 5 (oxygen tanks); Exhibit 6 (mattress); Exhibit 7 (i.v. fluid bag); Exhibit 8 (exterior of employee's dwelling); Exhibit 9 (employee's head trach); Exhibit 10 (employee torso head); Exhibit 11 (employee diaper 
stomach tube); Exhibit 12 (employee torso head).
 (c) Armstrong Associates facsimile transmission from Bruce Holt to Frank Bricio dated 5 April 2001, identified as The plaintiff's Exhibit 13 (4 pages).
 (d) Hand-written receipt from Gloria de Leon Gaytan in the amount of $1,008.00 (one thousand eight dollars), identified as The plaintiff's Exhibit 14 (1 page).
 (e) Medical records prepared by Raul Antonio Castillo-Lara, M.D., identified as The plaintiff's Exhibit 15 (9 pages).
 (f) Copies of relevant portions of Ley Federal del Trabajo and English translation, including Chapters/Titles I, II, and III, identified as The plaintiff's Exhibit 16 (6 pages).
 (g) E-mail correspondence produced or received by Bruce Holt, identified as the plaintiff's Exhibit 17 (16 pages).
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 10 July 1998, J. Carmen Fuentes suffered a compensable heatstroke. From that date until the present, J. Carmen Fuentes has been in a coma or persistent vegetative state. It is abundantly clear from the testimony of J. Carmen Fuentes' father, the medical records contained in the Commission's file, as well as the undisputed findings of fact of Deputy Commissioner Dollar's Opinion and Award of 22 February 2000 and the undisputed findings of fact of the Full Commission's Opinion and Award of 29 November 2000 that J. Carmen Fuentes requires twenty-four hour nursing care.
2. The uncontradicted testimony of Porfirio Fuentes, the testimony of Defendant-Carrier's case management nurse Mr. Bruce Holt, as well as the stipulations contained in the parties' Pre-Trial Agreement filed on 4 June 2001, indicated that Porfirio Fuentes and Yolanda Fuentes have provided twenty-four hour care to J. Carmen Fuentes from 4 November 1998 to 15 June 1999, and from 27 June 1999 to 13 May 2001. Yolanda Fuentes provides twelve hours of care during the daytime each day and Porfirio Fuentes provides twelve hours of care per night. From 14 May 2001 to approximately 28 May 2001, J. Carmen Fuentes received twelve hours of daytime (8:00 a.m. to 8:00 p.m.) care each day from two nurses (each nurse six hours per day) hired by Porfirio Fuentes.
3. Porfirio Fuentes and Yolanda Fuentes have provided outstanding care for their son and brother J. Carmen Fuentes. The defendants' own medical case manager describes the care provided by Porfirio Fuentes and Yolanda Fuentes as "superb" and better than the level of care that would be provided in a professional facility in the United States. Mr. Holt stated that the plaintiff had developed an ulcer while at UNC, but that it had resolved due to the great care the plaintiff was receiving from his family.
4. Throughout the day Yolanda Fuentes feeds J. Carmen Fuentes, changes his diapers, cleans his feeding tube to his stomach, cleans the tracheotomy, aspirates him, rolls him over every two hours (to prevent bed sores), provides massages, takes him out in a wheelchair, administers medication when necessary, and provides physical therapy exercises. Throughout the night, Porfirio Fuentes renders the same care to J. Carmen Fuentes that Yolanda Fuentes provides during the day. At the 13 June 2001 hearing, Mr. Fuentes was able to provide a detailed description of the care he and Yolanda Fuentes provide on a daily basis. Mr. Fuentes and his daughter also take J. Carmen Fuentes to receive medical treatment or arrange for physicians to come see him when needed. Mr. Fuentes and his daughter also go into town to purchase medical supplies, diapers and food for J. Carmen Fuentes on a regular basis.
5. In order to care for his son, Porfirio Fuentes has had to abandon his farming career as well as sell all of his farming assets.
6. The defendants have long known of J. Carmen Fuentes' need for twenty-four hour nursing care. Indeed, Deputy Commissioner Dollar found as a fact in her Opinion and Award of 22 February 2000 that J. Carmen Fuentes "will require nursing care on a twenty-four hour basis for the remainder of his life" and further ordered the defendants to "pay medical expenses incurred or to be incurred."
7. The Full Commission also found that the plaintiff needed twenty-four hour nursing care and ordered the defendants to pay for all medical care required by J. Carmen Fuentes, including "around the clock care."
8. Mr. Bruce Holt, who previously served as an expert witness for the defendants to challenge the life care plan prepared by the plaintiff's expert, was assigned to provide case management services by Defendant-Carrier. At the 13 June 2001 hearing, Mr. Holt testified that, despite the Commission's mandate requiring the defendants to provide twenty-four hour nursing care, the defendants never requested Mr. Holt to obtain twenty-four hour nursing care.
9. Mr. Holt further testified that the plaintiff's counsel provided him a copy of Deputy Commissioner Dollar's Opinion and Award of 22 February 2000 requiring the defendants to provide twenty-four hour nursing care. Mr. Holt testified at the hearing that he received requests from the plaintiff's counsel to obtain twenty-four hour nursing care on the following occasions: 30 October 2000, 1 November 2000, 1 March 2001, and 6 March 2001.
10. Mr. Holt testified that he made efforts to identify persons who may provide nursing care to J. Carmen Fuentes. Mr. Holt's e-mail correspondence of 1 November 2000 reported, "I have conducted research into the system of medical care in Mexico, specifically in the area which Mr. Fuentes resides. I have learned, i[f] such trained attendant care is available, it has to come from the nea[rest] hospital . . . As you know, Mr. Fuentes lives 2.5 hours away from San L[uis] Potosi, the nearest hospital to my knowledge. Furthermore, an estimate at that time regarding what he thought nursing care for Mr. Fuentes might cost, as Dr. Carrizales testified, when he was provided my researc[h] revealed that there is virtually no chance of having a trained indivi[dual] travel that far for this purpose, despite any financial incentives."
11. In December 2000, Mr. Holt; an interpreter, Roberto Espinoza; defense counsel; and the plaintiff's counsel traveled to Mexico. On or about 7 December 2000, Mr. Holt and the others met with Dr. Silvestre Carrizales Navarrete in his office. At that time, Mr. Holt, through the interpreter, inquired of Dr. Carrizales regarding the cost of nursing care in Ciudad del Maiz, the nearest town to J. Carmen Fuentes' farm home. Dr. Carrizales provided the estimate in December 2000. However, this estimate was later more than doubled. At his 2 August 2000 deposition, Dr. Carrizales testified that he had no basis for his earlier estimate regarding the cost of nursing care in Ciudad del Maiz and had just given a figure off the top of his head. Dr. Carrizales stated that he does not employ a nurse in his practice and has not worked in a government institution that does employ nurses.
12. Subsequent to his meeting with Mr. Holt in December 2000, Dr. Carrizales did in fact investigate the availability and cost of nursing care in Ciudad del Maiz, the community nearest where J. Carmen Fuentes lives. Dr. Carrizales determined that nurses who work at the Secretary of Health clinic in town earn 8,000 pesos per month working 37 and 1/2 hours per week. However, Dr. Carrizales was quick to point out that these nurses have light work "doing minor treatment, injections, vaccines, taking the weight, blood pressure, basic things."
13. Dr. Carrizales then explained that nurses who take care of J. Carmen Fuentes in his rural home have different and more difficult work than the government nurses who earn 8,000 pesos per month. Dr. Carrizales stated that "to go take care of — in your own vehicle to do something a lot more and a lot different than what a regular nurse would do that works for the government that makes 8,000 pesos, I think it's a lot harder and it's much more stressful. Example, there is no bathroom there. They don't have a floor there. It's concrete. The conditions of their home, I mean, I think all of that stuff should be taken into consideration and if you ask me for my opinion the conditions there are very hard." In light of his investigation conducted since December 2000, the nature of the work and the conditions in which the nurses have to take care of J. Carmen Fuentes, as well as the rate charged by the two nurses who were willing to care for Mr. Fuentes, Dr. Carrizales testified regarding the home nursing rate of $7.00 per hour saying, "My opinion it's very correct because as a doctor also I know what it's like to work with that type of a patient."
14. Mr. Holt was unable to secure any nursing care for J. Carmen Fuentes at any rate of compensation. Instead, Mr. Holt, with Defendant-Carrier's and defense counsel's approval, proposed a plan for the provision of nursing care for J. Carmen Fuentes. The plan proposed by Mr. Holt is reflected in his e-mail correspondence of 13 March 2001 and consisted of the following:
 (1) Set up an account for Yolanda at Bancomer in Cardenas. . . .
 (2) Arrange to have funds for attendant care wired to this account.
 (3) Supply the names of the trained individuals Dr. Silvestre [Carrizales] mentioned to Yolanda and Porfirio.
 (4) Have Yolanda pay for the attendant care as she/Porfirio sees fit.
15. In response to Mr. Holt's proposed plan, the plaintiff's counsel agreed to contact Dr. Carrizales in order to secure nurses to care for J. Carmen Fuentes. The plaintiff's counsel, pursuant to Mr. Holt's plan, contacted Dr. Carrizales to request him to locate nurses who may be willing to care for J. Carmen Fuentes. Dr. Carrizales identified three nurses, Gloria de Leon, Julietta Segura, and Grizelda Martinez — only two of these nurses (Gloria de Leon and Julietta Segura) provided paperwork to reflect their willingness to work. Pursuant to Mr. Holt's plan, the plaintiff's counsel and Dr. Carrizales provided Ms. de Leon with Mr. Holt's fax number so that she could submit a proposal as to hours, fees and copies of her credentials.
16. As testified by Mr. Holt, on or about 1 April 2001, Mr. Holt received a facsimile transmission from Ms. de Leon that he had translated from Spanish to English. In her fax to Mr. Holt, Ms. de Leon indicated that she and Julieta Segura would be willing to provide twelve hours of nursing care (six hours each nurse) from 8:00 in the morning to 8:00 in the evening, from Monday to Saturday, at the rate of $7.00 (seven dollars) per hour.
17. According to Mr. Holt, the information contained in Ms. de Leon's fax was forwarded to Defendant-Carrier. At no time did Defendant-Carrier inform Mr. Holt that it would refuse to use Ms. de Leon or any other nurses identified by Dr. Carrizales.
18. Ms. Martinez, Ms. de Leon and Ms. Segura are the only licensed professional nurses in Mr. Fuentes' community who have been willing to care for Mr. Fuentes in his rural home.
19. Ms. de Leon testified that she and Julieta Segura determined to charge $7.00 per hour. Ms. de Leon specifically denied Mr. Holt's suggestion contained in his hearing testimony that the plaintiff's counsel told her how much to charge. Furthermore, again contrary to Mr. Holt's testimony, Ms. de Leon specifically denied telling Mr. Holt or his interpreter that the plaintiff's counsel told her how much to charge to care for Mr. Fuentes.
20. As stipulated to by the parties, Porfirio Fuentes and Yolanda Fuentes each work 84 hours per week (12 hours x 7 days).
21. Porfirio Fuentes agreed to pay, and did pay, Ms. de Leon and Julieta Segura the total of $1,008.00 for two weeks of nursing care at the rate of $7.00 per hour. Mr. Fuentes' payment to Ms. de Leon is documented by her hand-written receipt detailing payment of $1,008.00 by Porfirio Fuentes for each nurse to care for J. Carmen Fuentes six hours per day, six days per week, for two weeks.
22. For approximately two weeks, Ms. de Leon and Ms. Segura provided nursing care for J. Carmen Fuentes at the rate of $7.00 per hour. This nursing care included physical therapy, cleaning out the tracheotomy, bathing the patient, aspirating the phlegm from the patient's throat, cleaning out the "canula," feeding the patient, and changing the patient's diapers.
23. As detailed in the plaintiff's Exhibit 1(a), Porfirio Fuentes and Yolanda Fuentes have provided over 22,000 hours of high quality nursing care to J. Carmen Fuentes. For this excellent and prolonged service, Defendant-Carrier has paid Porfirio Fuentes only $4,000.00 and has made no payments to Yolanda Fuentes.
24. In light of the stressful conditions encountered by a nurse caring for a patient in his rural home, the difficulty and extent of care required by a patient in a persistent vegetative state, as well as the customary rate of compensation received by a nurse in a government clinic who performs much less difficult work in better conditions, the reasonable rate of compensation received by a nurse in J. Carmen Fuentes' community is $7.00 per hour.
25. Based on the limited evidence presented regarding the hourly rate paid to nurses in plaintiff's community, the undersigned find $7.00 an hour to be an appropriate hourly rate for Porfirio Fuentes and Yolanda Fuentes. Porfirio Fuentes and Yolanda Fuentes have provided superb care for the plaintiff and that the plaintiff is in better condition under their care than he was when he was at UNC.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Full Commission has previously determined and ordered the defendants to pay the plaintiff's family and/or qualified professionals in his community "an appropriate fee for their services." See Full Commission Opinion and Award of 29 November 2000, Award Paragraph 5. The Full Commission's award of attendant care services and compensation to family members under N.C. Gen. Stat. § 97-25 is consistent with prior workers' compensation cases addressing the issue of attendant care. SeeGodwin v. Swift and Company, 270 N.C. 690, 155 S.E.2d 157 (1967) (compensation allowed to the plaintiff's brother and sister-in-law for 24-hour per day attendant care); London v. Sank time Catering, Inc.,136 N.C. App. 473, 525 S.E.2d 203 (2000).
2. The appropriate fee that a family member rendering attendant care services is to receive is dependent upon the rate charged and received by a nurse who provides such services in the injured workers' community.Levens v. Guilford County Schools I.C. File No. 637015 (Filed 23 March 2001); Davis v. Carolina Freight Carriers, I.C. File No. 490965 (Filed 22 July 1999). The only trained individuals in J. Carmen Fuentes' community who have been willing to provide home nursing care to Mr. Fuentes are Gloria de Leon and Julieta Segura, two nurses who have cared for Mr. Fuentes at his home. Porfirio Fuentes and Yolanda Fuentes are entitled to be paid $7.00 per hour for all attendant care provided to the plaintiff retroactively, as well as for the future attendant care they may provide for the plaintiff.
3. All amounts accrued and owing to Porfirio Fuentes and Yolanda Fuentes as of the date of this Opinion and Award shall be paid in a lump sum. Defendant shall pay interest on the accrued amount of compensation due, at the legal rate of interest provided in N.C. Gen. Stat. § 24-1. This amount is not subject to attorney's fees.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The defendants shall pay Yolanda Fuentes for attendant care she has rendered to J. Carmen Fuentes at the reasonable rate of $7.00 per hour for the hours she has worked plus interest at the legal rate set out in N.C. Gen. Stat. § 24-1 until paid. This amount is subject to the attorney fee awarded in paragraph 6.
2. The defendants shall pay Porfirio Fuentes for attendant care he has rendered to J. Carmen Fuentes at the reasonable rate of $7.00 per hour for the hours he has worked plus interest at the legal rate set out in N.C. Gen. Stat. § 24-1 until paid. This amount is subject to the attorney fee awarded in paragraph 6.
3. Defendants do not dispute that they owe Yolanda Fuentes $3.00 per hour for attendant care. Should defendants appeal this Opinion and Award, notwithstanding the appeal they SHALL IMMEDIATELY pay to Yolanda Fuentes the undisputed amount of $3.00 per hour for the care she has rendered plus interest at the legal rate set out in N.C. Gen. Stat. § 24-1 until paid. N.C. Gen. Stat. § 86.1.
4. Defendants do not dispute that they owe Porfirio Fuentes $3.00 per hour for attendant care. Should defendants appeal this Opinion and Award, notwithstanding the appeal they SHALL IMMEDIATELY pay to Porfirio Fuentes the undisputed amount of $3.00 per hour for the care he has rendered plus interest at the legal rate set out in N.C. Gen. Stat. § 24-1 until paid. N.C. Gen. Stat. § 86.1
5. For future care, defendants shall pay Yolanda Fuentes, Porfirio Fuentes, or any qualified person the reasonable rate of $7.00 per hour. This amount is not subject to an attorney fee.
6. The defendants shall pay to the plaintiff's counsel a fee equal to twenty-five percent of the lump sum amount retroactively paid for attendant care for attorney's fees.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER